We move to the third case this morning, Bernard v. Sessions. Good morning, Your Honors. May it please the Court, my name is Afshan Khan, and I will be representing the appellant, Andre Bernard, in this matter. Your Honors, this case comes down to three main issues. One, whether the board and the immigration judge erred in denying my client relief under withholding a removal and convention against torture based on his sexual orientation, being a bisexual male from Jamaica. Two, whether, similarly, the board and immigration appeals erred in denying my client withholding a removal and cat relief based on his family's imputed political opinion, being a member of a Jamaican labor party. And three, whether the board and immigration judge erred in determining that my client was ineligible for withholding relief based on his 2001 domestic battery conviction. Based upon a review of the total administrative record, you will see that there is a contrary conclusion to what the board and the immigration judge determined. The two-part hearing that my client had during his immigration proceedings, he testified to growing up in Jamaica and hearing derogatory slurs being told time and time again towards members of the LGBT community, as well as hearing popular cultures advocating the killing of gay men. He also witnessed, as a young child, the lynching of two gay men who were caught acting intimately together by a mob in which the government, which the Jamaican police failed to actively, affirmatively act and intervene. And among that mob was his own family relatives advocating the killing of these two gay men because of the fact that they were gay men acting, committing homosexual acts. How long ago was that initial problem? This was back in when he was growing up, which was 20 years ago, Your Honor. However, during the course of his immigration proceedings, he did have five witnesses, including his father, who testified to inadvertently disclosing his son's sexual orientation to his family back in Jamaica currently. And he was threatened during the pendency of his immigration proceedings by his cousin, who was also one of the individuals who advocated for the killing of these two gay men. He could relocate to another part of Jamaica, couldn't he? Unfortunately, Your Honor, he cannot. Based on the country reports, and the Administrator Group provides this in numerous reports between pages 691 to 821, even our own U.S. Department of Justice states that there are laws that criminalize homosexual behavior. How long ago were those reports? The most recent U.S. Department of Justice report was 2016. I'm sorry, what's that? Several incidents, at least over 100 incidents of physical assault, as well as verbal threats against members of the LGBT community. And the fact that the police rarely either refuse to actually take these reports or exacerbate the situation by telling these individuals to not make these reports or intimidating them to making these reports as well. Can you talk a little bit about what the evidence of that is, with the evidence of the police turning a blind eye or tacitly supporting? Of course, Your Honor. So the Human Rights Watch completed a report from between 2012 to 2014 in which they spoke with members of the LGBT community who had been physically assaulted, whether it be beatings, whether it be verbal assaults, being called slurs, and they reported these things to the police. In some instances, the police refused to actually make the report, stating, well, this is just a part of our culture. Other incidents saying, you can report these things, it doesn't matter if you're gay or if you're this and that, or using derogatory slurs in terms of when these individuals tried to seek any type of protections from the police. And this report shows that this is something that happened rampantly throughout Jamaica, showing that no matter where my client resides, that he would still be facing this persecution. Counsel, so under CAT, you do have to show torture. So part of what happened in the decision is the conclusion that some of the evidence didn't show torture, but rather verbal harassment or abuse that didn't rise to the level of torture. Could you talk a little bit about that? Right, Your Honor. Under CAT, it's either the government officials themselves commit these acts, or they are complicit to the actual actions by others. And in these instances, the government officials themselves, the police themselves, were not formally taking any of these reports, were not investigating these concerns of harassment and physical assault. And there have been government officials who stated in Jamaica that this is not an issue of concern for Jamaican people. And they continue to allow for this, they continue to allow for this anti-gay, homophobic attitude to persist in Jamaica itself. That being said, again, upon similar reasoning, my client also had a claim under political opinion, imputed political opinion, based on the fact that his family were members of the Jamaican Labor Party. He had stated that his recent deaths of his uncle, who he had worked with actively as part of the Jamaican Labor Party, had recently been killed because of his active role as a leader in his community for this party, as well as two of his cousins that had died because of their membership to the Jamaican Labor Party. I see my time is running out, Your Honors. If I may, if I may save some rebuttal time, about four minutes. I'll start with you. Thank you. Counsel, Senator Counsel. Good morning, Your Honors. It may please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Petitioner waived any dispute to the agency's finding that he can safely relocate within Mexico, excuse me, Mexico, Jamaica. The Court lacks jurisdiction over the agency's finding that the crime involved here is a particularly serious one that bars him from obtaining withholding of removal, and substantial evidence supports the agency's finding that he is not eligible for deferral of removal under the Convention Against Torture. In his reply brief, Petitioner, in essence, concedes that he failed to address the relocation finding in his opening brief, and again, concedes that matters not specifically raised in opening briefs are waived. He claims instead that he challenged the totality of the circumstances or the totality of conditions in Jamaica, but ultimately the record does not support that. What is present in the record is substantial evidence that the conditions in Jamaica are changing. Yes, Jamaica is not an ideal place for a homosexual or anyone, any member of the LGBT community to live. But as Your Honor was questioning, is there evidence here of torture? Is there evidence that an individual is going to face harm that rises to that level? Because this Court has consistently said that torture is an extreme concept that goes beyond mere harassment. And while small assaults or harassment are, of course, unfortunate and should be prosecuted, investigated, and what have you, they don't rise to the level of torture. We have evidence in the record of hearsay speculation from his own family about conditions in Jamaica, statements about an uncle that was killed. But again, they concede in their own testimony that that's based entirely on hearsay. I heard from other family members. I heard from other people. There is no evidence as to exactly what happened here. This is all speculation. What is in the record? The rules of evidence don't apply in a proceeding. I'm sorry? The rules of evidence don't apply here, so hearsay is still admissible, correct? Correct, but that goes to wait. It's whether or not it's sufficient because while the immigration judge did find that this individual lacked credibility, but the board didn't address that finding, so we assume he's credible. The INA, nonetheless, requires both persuasive and credible testimony. Credible testimony is not enough. Yes, Jamaica still has an anti-buggery law, but it hasn't been used to prosecute anyone since 2005. That's from Petitioner's own evidence at Administrative Record 497. Also from his evidence, Jamaica, quote, is making progress. Tolerance is on the upswing. There's just things are different. Things are changing in Jamaica. And again, the whole point of the relocation finding is that while perhaps Petitioner's own hometown where he knows people and people know him, maybe, in as much as he's been gone for two decades, even if they know him in his hometown, he can live elsewhere in Jamaica, and that's the entire point of the relocation finding. Turning to the particularly serious crime finding, again, Petitioner's trying to relitigate his conviction. He claims he acted in self-defense and then claims that the agency didn't consider this evidence. That's simply just not the case. Both the immigration judge and the board cited his self-defense claim and found that it lacked merit. This court has stated that there is no rule of law that prevents the agency from designating any crimes, particularly a serious one. The facts of this case absolutely support that finding. With respect to his political base claim, again, Petitioner has said nothing regarding the fact that the party to which he claims to be a member is, in fact, in power in Jamaica and how that affects his claim. Ultimately, what we have here is a question of weighing evidence. Petitioner is calling upon this court to decide the case differently simply because he disagrees with the result, and that is not allowed under the substantial evidence standard. This court has no further questions. I believe so. Thank you, Counsel. Thank you, Your Honor. Your Honors, in regards to my client's domestic battery conviction back in 2001, the immigration judge's opinion contradicted herself several times in her actual written decision. While the domestic battery charge does state its intent to act with bodily harm against a household member, my client did testify during his immigration proceedings that he did act in self-defense, and he was the one calling the police in terms of reporting what had happened to him. And even the judge says in her own opinion that this was a mid-range offense in terms of the sentencing itself where he only got 12 months of conditional discharge. So in that sense, it would not be considered a particularly serious crime, making him ineligible for withholding of removal relief. That being said, again, this court has held that the more likely than not standard that withholding removal and cap use is not a literal standard. It must show that this is essential risk that is based on obtainable information by the appellant. And here, my client has submitted these documents since the very beginning of his immigration proceedings. He has shown and corroborated from his testimonies by himself as well as his family stating that there is a credible well-rounded fear, which the immigration judge does not deny and that she does find credible based on his sexual orientation as well as his political opinion. And in terms of the comments that his family, his testimony of his family, his father himself specifically heard from a cousin telling him, you should have beat the gay out of him and he better not come around here. The same cousin who he remembered advocating the lynching of two gay men 20 years ago. So clearly this attitude is still persistent today. And again, the country reports show that no matter where my client goes, that this persecution and torture, this discrimination towards LGBT members is still persistent throughout Jamaica. So regardless of whether he is in Spanish Town, Jamaica or another part, he would still be targeted of this and would not be an exception to any type of harassment. Counsel, could you address the government's waiver argument on that point? I believe that my client addressed this in the immigration proceedings and based on, and throughout this, he's never denied that he would feel safe in any part of Jamaica. And I understand what government is saying. But again, my client has said from the very beginning that he cannot relocate anywhere based on that. And he testified to that during his immigration proceedings as well. And the country reports substantiate this also. Again, looking at the total administrative record, it shows clearly that there is a contrary conclusion to what the board and immigration judge had determined. I am not asking you to reweigh the evidence. But looking at all the cumulative evidence, you will see that it does contradict what the board and immigration judge found and that my client should be remanded and reversed back to the immigration court itself. Again, my client's fear of going back to Jamaica stems from the fact that he is a bisexual male. And based on his political opinion, as his family's imputed political opinion, as a Jamaican Labor Party member. He has time and time again expressed his fear. He has been found credible. And even the judge had stated in her opinions that he was consistent in his statements. This court has held previously in fuller relinch that they affirmed the judge's decision in that case, stating that the immigration judge discredited the appellant's testimony in the fact that she didn't find him credible. But here, that's obviously distinguishable because my client was found credible. And that based on that, and based on what he experienced, and based on the corroboration of the testimonies of his family and friends, and what the country reports show, there's no exception that he would not be a target for sexual orientation or for his imputed family political opinion. Thank you, Your Honors. Thank you, Counsel. The case will be taken under advisement.